**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JONES ESTATES LLC, | ) |
| Plaintiff, | ) Civil Action No. 2:22-cv-00646 |
| v. | ) Magistrate Judge Lisa Pupo Lenihan |
| GEORGIO BURGAGNI, | ) ECF Nos. 38 and 40 |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER
ON MOTIONS FOR SUMMARY JUDGMENT**

For the reasons that follow, Defendant's Motion for Summary Judgment, ECF No. 40, will be denied and Plaintiff's Motion for Summary Judgment, ECF No. 38, will be granted in the form of (a) Defendant's specific performance of completion of the transference of the subject property under the terms of the Asset Purchase Agreement and (b) an award of reasonable attorney's costs and fees in pursuit of specific performance, as determined by this Court on the parties' submissions pursuant to this Opinion and Order.

On May 2, 2022, Plaintiff Jones Estates LLC, a North Carolina limited liability corporation dealing in real estate investments, including mobile home parks across the United States and in Western Pennsylvania,[1] filed a Complaint in Equity against Defendant Giorgio Burgagni (misnamed as Georgio), a citizen of New Jersey, regarding the contractual sale of Defendant's Scenic View Mobile Home Park (the "MHP") located in Mercer County, Pennsylvania. ECF No. 1; *see also* ECF

---

[1] ECF No. 1; ECF No. 39 at 2.

1

No. 41.  In its brief Complaint, Plaintiff alleges that Defendant "default[ed] under the Asset Purchase Agreement" (the "Agreement") executed December 17, 2021 for sale of the property by refusing (by email of March 22, 2022) to complete sale at the purchase price appropriately calculated under the Agreement and declaring the deal "off".  ECF No. 1-2.  Plaintiff 's sole (one-page) Count is an "Action for Specific Performance and Action for Counsel Fees" resultant from Defendant's default.  ECF No. 1 at 3.   By Order of July 8, 2022 Defendant was enjoined from transference or encumbrance of the MHP pending settlement or further Order of Court.  ECF No. 23. The parties were unable to reach settlement on this matter during or following their ENE and discovery.  They have filed the requisite other briefings and the issues raised in said Motions for Summary Judgment are ripe for disposition.  *See generally* ECF Nos. 38 through 52.

      The Court notes that the Agreement for sale was entered into following over a year of sale-related communications between Plaintiff's sales representative, Adam Manns (who visited/toured the MHP twice); Defendant, an 88-year-old gentleman; and Defendant's son, Nicholas Burgagni. ECF No. 39 at 2-3; ECF No. 52 at 2.  And although the MHP has 112 to 114 "pads", Defendant attests that since at least 2015 only "27 pads have been sufficiently developed to allow them to house residents" and that throughout the parties' negotiation and due diligence period there were 23 residents. *Compare* ECF No. 1 at 2 *with* ECF No. 41 at 2.[2]  The Agreement provides for a purchase price of $750,000 subject to a correspondent percentage price reduction if the number of residents/tenants two weeks prior to closing is less than the 29 expressly warranted by Defendant

---

[2] *Compare also* ECF No. 39 at 3 (Mann's testimony from notes of June 2021 that Nicholas Burgagni represented that there were 29 residents at that time); ECF No. 51 (denying representation and citing tenancy related income and expense information provided to Plaintiff in advance of Agreement).

under Section 8.3 of the Agreement. ECF No. 1-1 at 7.[3] The Agreement also provides for a 60-day due diligence, or "Test and Study", period with an optional 30 day extension, which Plaintiff elected, bringing the contractual date of due diligence closure to March 15th, with closing to occur within another 30 days, *i.e.*, on or before April 15th. Section 11.2 (ii) of the Agreement includes specific performance as a remedy for default, together with entitlement to an award of fees/costs incurred in pursuing specific performance.

On approximately March 11th, Plaintiff notified Defendant of its "discovery" - by Plaintiff's provision of a "rent roll" identifying the MHP residents - of an actual tenancy of 23 and its corresponding reduction of the purchase price to $568,966.[4] On March 22nd, Defendant, through his son Nicholas, responded by email that the "deal was off". And on April 14, 2022, Plaintiff through counsel communicated its intent to proceed to closing. ECF No. 39 at 7-8 (referencing Motion exhibits).[5] There being no further response from Defendant, the May 2nd Complaint was filed.

Plaintiff has succinctly but fairly stated the general legal standard regarding review on summary judgment, accompanied by a citation to *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-8 (1986). ECF No. 39 at 9. Defendant provides a correct one sentence statement of the basic principle devoid of case citations. *See* ECF Nos. 39 and 41.

---

[3] The Court notes that this directly proportional reduction in purchase price (*i.e.*, a 10% reduction in tenants yields a 10% reduction in price) allocates the entire $750,000 to the warranty of 29 current tenants and omits any consideration for, e.g., the value of the real estate and the physical MHP/its fixtures and facilities. Here, the terms of Section 8.3 resulted in a $181,034 – a more than 24% - price reduction. It is hoped this illustration may guide Defendant – and perhaps his extended family/community – as to the importance of understanding the terms of, and consulting legal counsel regarding, significant legal transactions.

[4] This reduction was based on a reduction from 29 to 22 tenants, as one tenant was "more than thirty (30) days past due", entitling Plaintiff to a further purchase price adjustment under Section 8.3 on that basis. ECF No. 39 at 7.

[5] The Court notes Plaintiff's timing of its notice of purchase price reduction and notice of intent to proceed to closing.

Defendant's core position on his two-page analysis in support of his Motion for Summary Judgment is, and has been, that the Agreement reflects a mutual mistake regarding the number of tenants warrantied by Defendant at the time of execution. ECF No. 41 at 3 (Plaintiff "drafted the APA incorrectly, stating [the residents as 29. Defendant] did not catch this mistake.");[6] *id.* at 4-5 (legal argument in support). He also asserts that he believed the purchase price to be "based on the income and expense information" rather than the number of tenants, *id.* at 4, a belief not reflected in the Agreement. And he asserts that there was no triggering "material adverse change in the condition of the Property" as required under Section 8.3, a circular argument dependent on his (invalid) assertion that Section 8.3 should apply to a reduction below 23 rather than 29. *Id.* at 5. *See also* ECF No. 47 at 9. Defendant thereby effectively argues entitlement to reformation of the Agreement on grounds of mutual mistake, a determination which would require that Defendant establish clear and convincing evidence of a meeting of the minds between the parties on those terms. The record does not support the plausibility of a reasonable fact-finding in his favor. The fact which no amount of empathy can avert, however, is that there was an adverse change in the condition (*i.e.*, the tenancy) of the property as warranted.

The Court rejects each of Defendant's assertions as a basis for either grant of summary judgment to Defendant or denial of summary judgment to Plaintiff:

First, under the cardinal rules of contract construction, a written agreement is presumed to reflect the intent of the parties and their mutual understanding at the time of signing. Here, the

---

[6] The elderly Defendant testified that he did not remember the terms, including the purchase price, of the Agreement, which was "worked on" by his "son, Nicky", while Nicholas Burgagni testified that he "read some of [the Agreement but is] not a lawyer [or] a real estate attorney." ECF No. 39 at 5. *See also id.* at 12-13 (properly noting, with case citation, the duty under Pennsylvania (as other) law to read the contract one is signing). *Cf.* ECF No. 51 (asserting that Nicholas Burgagni read and responded to the Agreement, a fact dispute not material to the Court's holding).

relevant provisions of the Agreement, *e.g.*, Section 8.3, are not ambiguous and the Court does not look to extrinsic evidence to interpret them or to ascertain the parties' intent.

Second, and most importantly, Defendant fundamentally misunderstands, and thus mis-asserts, the law of mutual mistake. As Defendant himself notes, "the doctrine of mutual mistake of fact serves as a defense . . . when the parties . . . have 'an erroneous belief as to a basic assumption of the contract at the time of formation . . . .'" ECF No. 41 at 4 (quoting *Hart v. Arnold*, 884 A.2d 316, 333 (Pa. Super. 2005)). The doctrine is inapplicable to Defendant's express warranty under Section 8.3 of the Agreement on which, by its very nature, Plaintiff was entitled to rely. *See e.g., Gulf Oil Corp. v. F. P. C.,* 563 F.2d 588, 600-01 (3d Cir. 1977) (holding in case with unambiguous warranty that contractual express warranty "by its very nature" precluded relief, party assumed risk under its terms, and could not later assert defense of mutual mistake); *id.* ("We believe that the existence of a warranty as to [a material term] completely forecloses equitable relief based on a mistake as to [said term]"), *id.* (analogizing to express warranty by "seller of land or goods [as to] title or quality or condition" who cannot then "escape from his warrant by proving that he reasonably believed [something else]") (citing 3 *Corbin on Contracts* s 598 at 591-92 (1960); 6 S. Williston and G. Thompson, *Williston on Contracts* s 1934 at 5417 (rev. ed. 1938)).[7]

---

[7] *Cf.* ECF No. 39 at 12 (asserting that "the number of residents at [the MHP] at the time the APA was executed was information within the possession of only Georgio Burgagni" – a highly questionable assertion from which Plaintiff concludes that "Jones Estate reasonably relied").

Although the Court concurs with Plaintiff's conclusion, it does so on different grounds *i.e.*, that of the contractual warranty. Plaintiff neither pursues nor provides case support for this analysis. *See e.g.*, ECF No. 45 at 1-2 (Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment) (entirely omitting - from its summation of arguments rebutting Defendant's claim of mutual mistake – reliance on warranty). *Cf. generally,* ECF Nos. 47 and 52 (fairly noting and contesting determinative force of Plaintiff's arguments, including its emphasis on, *e.g.*, cases regarding a party's failure to read the agreement); ECF No. 45 at 7-8 (Plaintiff's Brief in Opposition, grounding an argument that Defendant bore the risk on his alleged failure to read). *Cf. also* Plaintiff's highly similar filing at ECF No. 39 (Brief in Support of Plaintiff's own Motion).

Defendant is not entitled to a contractual defense/recission on grounds of mutual erroneous assumption as to the subject of his express warranty. He cites no authority to the contrary. At bottom, although he now asserts that he "was not willing to execute the APA for less than $750,000 regardless of how many [tenants] existed at the time the APA was formed", ECF No. 41 at 5, Defendant executed a binding Agreement to do just that, with a price adjustment calculated under the express warranty of Section 8.3.

The Court concurs with Plaintiff's simplistically presented but fundamentally correct assertion that the Agreement "is a valid, enforceable contract [superseding all previous agreements and representations] and, if a mistake was made, [Defendant] unilaterally made [it] and he is not relieved of his [contractual] obligation." ECF No. 39 at 1, 6. *See also id.* at 9-10 (two paragraphs on the basic law of complete and integrated contracts, superseding evidence of *e.g.* prior agreements); *id.* at 10-13 (parsing, with digressions and omissions, the inapplicability of the doctrine of mutual mistake to the circumstances *sub judice*).[8]

In sum, despite Defendant's observation (in his briefings and other filings) of facts suggesting that (a) Plaintiff's offer and Asset Purchase Agreement terms were weighted in its favor in ways and/or to an extent potentially modifiable in negotiation; (b) Plaintiff may have - given information on in-use lots/tenancy reasonably known to it during 2021 - anticipated, through those December 2021 Agreement terms, an advantageous price reduction on sale; and (c) Plaintiff may have been dilatory in completing due diligence and last-minute in communicating both its price reduction

---

And the Court notes that Plaintiff will be entitled to reasonable attorney's fees and costs for work determined in the Court's discretion to have resulted in its prevailing in this action.

[8] The relative factual and legal simplicity of the action will also be given appropriate consideration in the Court's review of Plaintiff's Motion for fees and costs.

calculation and intent to close to Defendant, the overriding pertinent fact remains: Defendant voluntarily executed an unambiguous written Agreement containing an express warranty of tenancy and contractually binding him to sell the MHP on the Agreement's terms. He was not free, under the circumstances and arguments/analyses of record, to declare that agreement "off" and default. In ordering specific performance the Court therefore adheres, as it must, to the maxim: "Equity regards as done what ought to have been done."

It is regrettable that Defendant (or a family member on which he chose to rely) did not read, or read with understanding, the entirety of the Agreement he was signing, nor apparently seek any legal counsel with regard to such a significant transaction; and it is regrettable that these failings may have facilitated some questionable leveraging of his lack of sophistication by Plaintiff. It is also regrettable that the parties were unable to reach settlement in this matter despite the efforts made towards resolution. Defendant having advanced no basis for a different holding, and there being no genuine issues of material fact presented, the Court enters, under the terms of the Agreement, the following:

## II. ORDER

Defendant's Motion for Summary Judgment, ECF No. 40, is **DENIED**.

Plaintiff's Motion for Summary Judgment, ECF No. 38, is **GRANTED**, as follows:

1) **Specific Performance** – The parties are directed to complete closing on the Scenic View Mobile Home Park in accordance with the terms of the Asset Purchase Agreement, and at the purchase price

calculated pursuant to Section 8.3 at the time sale would have been completed but for Defendant's default, within thirty (30) days of this Order.

2) **Reasonable Attorney's Fees and Costs** – Plaintiff is directed to submit its Motion, together with appropriate documentation, regarding its entitlement under Section 11.2 (ii) of the Asset Purchase Agreement to an award of attorney's fees and costs reasonably incurred in pursuing specific performance, within thirty (30) days of the date of this Order, with Defendant's Response to said Motion to be submitted within thirty (30) days from Plaintiff's filing.

**IT IS SO ORDERED.**

October 2, 2023

_____
Lisa Pupo Lenihan
United States Magistrate Judge

cc:   Counsel of record.